This is a very simple case, probably in terms of quantum, significant only to the claimant who doesn't earn a great deal of money, but it presents an opportunity for this Court to resolve an important unresolved issue in ERISA, at least as relates to Louisiana claimants. And that issue is, what is the most analogous statute of limitations to a claim under 502C for statutory damages resulting from non-production of plan documents? Just briefly, because I know the Court has read the factual background, but Mr. Babin developed carpal tunnel syndrome as a result of his machinist job duties. He originally had carpal tunnel surgery in December 2011 and then returned to work in February 2012, having had only like six weeks off on the job. He still couldn't properly perform his job responsibilities and as a result of that he was fired in May 2012. Rather than resort to any other type of hostilities about his termination, he decided to take the easiest course and just file a request for disability benefits. So he requested a claim form from his employer, Quality Energy, and Quality Energy sent him the claim form, but in the course of doing so advised him that his coverage was terminated, effective with the termination of his employment. Taking the position that his disability had actually arisen during the course of his employment, Mr. Babin completed the short-term disability application. He submitted it and forwarded it to Quality Energy for them to complete the employer section of the form. This was actually the reverse of what was contemplated. The form on its cover instructions states explicitly that the employer is to complete its section of the form first, but the employer refused to do so. So he sent the form to Quality Energy and they still refused to fill out the section that was the employer validation of employment and wages. So he went on ahead and he sent the claim in to the claims administrator, which was standard, and sure enough the claim was denied by standard on the basis that the forms weren't complete. The employer hadn't completed his section, therefore the claim was no good and the claim was denied. When he received the denial, after he received the denial, Babin requested the plan documents via letter in an effort to ascertain his rights to appeal and to ascertain exactly what the plan terms were because he had no idea. That's why it seems to me it doesn't make a lot of sense. You're arguing for a 10-year statute of limitations for failure to turn over those plan documents, but the reason you're entitled to the plan documents is what you just said, which is it makes sure you know your rights. So when you're litigating the claim denial, you have those materials with you. If we were to have a 10-year statute of limitations, people would be bringing this argument years after they can even challenge the claim denial. So do you see why it concerns me that it doesn't make sense to have the limitations period so drawn out when the whole reason you get these documents is to support your challenge to the denial itself? I appreciate that, Your Honor, but in this case where you don't get the plan documents at all, and specifically what happened to Mr. Babin that is a good example of why it doesn't work, Mr. Babin believed that, like most short-term disability policies, that this policy provided coverage for six months. It just so happened that Mr. Babin's injury was of approximately six months' duration, the time that he was actually out of work. The injury was longer, but he worked part of the time. So not receiving the plan documents, Mr. Babin had no idea that he needed to file a second application for long-term disability. I understand all that, but my point is if he gets the rights to those documents 10 years later, it's not going to do him a lot of good. Because the statute of limitations would have already run on challenging the claim denial itself. It would have run long before that 10 years were up. Correct, correct. If he got them 10 years later, this plan, which isn't in the record, which is another issue, but this plan had a three-year statute of limitations contained within the plan. So Your Honor's point is well taken. If he got them 10 years after the fact, it wouldn't have helped him very much. So Babin filed this suit. After the suit was filed, Standard, as the claims administrator, virtually immediately settled the claim for benefits, leaving only the claim for what do we do about the non-production of the plan documents. So as the Court knows, in ERISA, in most instances, other than the specific breaches of duty defined in sections of 502, doesn't provide a statute of limitations on its own. And each jurisdiction is left to define what the statute of limitations is for each particular claim by resort to the most analogous state law claim in that jurisdiction. Babin submits that the most applicable statute of limitation or prescriptive period is 10 years under either of two methods of analysis that were both rejected by the District Court. The first is breach of fiduciary duty. It's inherent in ERISA and drawing on all of its origins and background in trust law that complete disclosure of documents, especially when requested, lies at the core of a fiduciary's responsibility. It is itself a breach of that trust to not provide those documents when requested by a beneficiary. The reason the fiduciary duty claim usually has such a long statute of limitations is because the very fact that you're trusting someone, say your accountant or your money manager, is because you're giving them that trust and you don't really know what they're doing. So that's why you have so long, because it might take a long time to discover they engaged in malfeasance. But here, you're requesting the documents. I mean, you know if they don't come to you. So why does that support relying on this lengthy limitations period when it really applies when a person doesn't know what's happening? Because the claimant is in the dark as to his rights. I mean, Your Honor's position is well taken. I guess that if the claimant knows he didn't receive the documents, at that point, he's got to decide what he's going to do about it. This is a small claim. The practicalities of the situation come into play as well. But the fact is he didn't even know procedurally what he was required to do, the next step. So Your Honor's suggestion would mean that he would have to undertake two litigations in effect. First, to go ahead and force production of the plan documents. And then, if the plan documents revealed that he had some other rights, to file another separate action to try and enforce his rights to benefits. That doesn't seem like an efficient way to proceed. Maybe, but he wants the documents to help him with his challenge to the claim denial or to get the other coverage in this case, right? Correct. But the inquiry has always been cast in terms of what is the most analogous state statute. When you get into the cases, you see this split all around the country of what is the most analogous statute of limitations in each jurisdiction. Louisiana has a couple of cases that are cited in the brief and discussed that say that that most analogous statute of limitations is breach of fiduciary duty. I like the discussion of it from Judge Englehart Best in the Seale case, where he says the Court is not convinced that the one-year limitations period applies to a failure to produce plan documents, and that the statutory limitations period may be substantially longer under Louisiana law. That's Seale v. Maverick claims cited in the brief. This Court, in considering the Hatterberg case, also reached the determination that the applicable standard was, under Texas law, to be judged as a breach of fiduciary duty. In Hatterberg, the statute of limitations for breach of fiduciary duty happened to be two years as well, but the Court nonetheless reached the decision that breach of fiduciary duty was the most analogous state law claim. When you look at the statutory definition in ERISA of a fiduciary's obligations, it requires a fiduciary to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries, and it sets forth a prudent man standard with the care, skill, prudence, and diligence then prevailing that a prudent man acting in a like capacity familiar with such matters would use. Subsection A of that statute has often been described as imposing a duty of loyalty on plan administrators, while subsection B creates the duty of care in how they perform that duty. Complete and accurate information as to the nature of what the claimant is pursuing and information reasonably necessary to enable them to enforce their rights is considered a breach of trust. The best discussion of that that I've seen is contained in the case Eddy v. Colonial Life Insurance, which is a D.C. Circuit case, 919, Fed 2nd, 747. The second area that the court rejected in analyzing the possibility of application of a 10-year statute of limitations was Louisiana's liberative prescriptive period of 10 years for a personal action. A personal action is defined in Louisiana Code of Civil Procedure, Article 442, as an action brought to enforce an obligation against an obligor. When you read 29 U.S.C. 1132c1, it certainly sounds like that type of obligation. Any administrator who fails or refuses to comply with a request for information which such administrator is required to furnish may be held personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal. Now, that's the statutory obligation, so when we're looking at application of a contractual statute of limitations, we have to question whether or not the underlying plan documents themselves contain the same type of language and submit to you that, for the most part, they do. And that's because 29 CFR 2560.503 requires that the claims procedures of a plan have a provision that the claimant will be able to obtain, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits. In this case, the Court rejected the contract analogy without even taking a look at the plan documents, which had not been filed into the record. I had asked opposing counsel about supplementing the record to include those documents as the law between the parties, but that request is unresolved. You're about to run out of time, so I wanted to ask you one question about your second argument that regardless of what the limitations period is, it doesn't begin to run. It's basically told while the claim is pending. My only question is, did you raise that in the district court to Judge Zaney? I don't believe that we did, Your Honor. Any other questions? Thank you.  Mr. Raymonique. Raymonique. Good morning, Your Honor. Simeon Raymonique on behalf of Quality Energy Services, Inc. Your Honors, this is a relatively simple claim. Mr. Babin started working for Quality Machine Shop, which is a division of Quality Energy Services, Inc., and it's its own separate company, back in 2008. In January of 2011, he went out with a right corporal tunnel surgery, was out on short-term disability for a couple of months, returned to work with no problem. In December of 2011, he went out with a left corporal tunnel surgery. He was out on short-term disability, returned to work on February 6th of 2012 with a full medical release. After that, no problems, but his employment was terminated in May of 2012, in early May. That was due to performance issues on the job. Right after his employment terminated, he elected COBRA. He was able to keep his health, life, and dental insurance, which he did. He kept it until, and you have a longer period of time to keep it than he did, but he kept it through December of 2012 when he stopped paying premiums. But in the meantime, after he made his COBRA election, it wasn't Mr. Babin who contacted Quality Energy's benefits person to try to get information regarding keeping this disability insurance. It was counsel for Mr. Babin. Counsel sent first a phone call, then a subsequent email, asking for an application for disability benefits. This was provided, and this was done on June 28th of 2012. The next day, the benefits person sent an email back providing the disability application to counsel for Mr. Babin. They apparently applied for a disability, and he did go out for a subsequent surgery that they mentioned. It was on an elbow, nothing to do related to this corporal tunnel, but he had a surgery. After that, we hear nothing from him for quite some time. In February, on February 25th of 2013, Mr. Babin's disability claim is denied by the insurance company, Standard Insurance. Thereafter, about a year later, in February of 2014, counsel allegedly sends a letter to Quality Energy Services regarding a quest for documents. Now, in this letter, he does request documents, but it was sent via fax. The fax number, as you can see from record documents that's in there, it was document 73 in a record on appeal, is the email where they transmitted the disability application to Mr. Babin's counsel. It contains a fax number. The fax number where this was sent to is not the same fax number. It's not a quality fax number. And prior to that letter was even being sent, the division where he worked, Quality Machine, LLC, was sold in January, about a month or so before that request for information even went out. So that division is not even in place anymore. Now we go 20 months down the line. Counsel files suit. He files suit against Standard Insurance, the insurance company, as well as Quality Energy. Two basic causes of action in his suit. In his suit, he filed under 1132A1B for the benefits, disability benefits, that he was allegedly denied. And he makes a statement in there about breach of fiduciary duty, claiming Quality did not fill out this disability form. All under the section for A1B, claim for benefits under ERISA. And his second cause of action was strictly a claim for penalties for failure to produce requested documents under 1132C. Now, after they filed suit, they ultimately settled a relatively short time period after with Standard. And in doing so, they released all claims arising under 1132A, which would include his claim for benefits, any breach of fiduciary duty claims that arose under 1132A3, anything. Everything under 1132A, only thing he preserved was his claim for benefit, for failure to produce requested documents pursuant to 1132C. This was before this court in Lopez, arising out of Texas law, and slightly different factual situation where it was on a claim for failure to provide notice of COBRA continuation. In Lopez, this court went through a lengthy analysis of what statute applies. The plaintiff there was claiming there was a contractual four-year statute of limitations under Texas law, whereas the defendant was claiming there should have been a two-year statute under the Texas tort law. This court went through and made a distinction of, wait a minute, we have to look at the two forms of action because under 1166, which was the COBRA notification requirement, you did not have anything that points out what's the statute of limitations that actually applies. Mr. Lopez said it wasn't contractual, but then it applied the Texas insurance code statute of limitations. I don't see anyone arguing for that in this case. Why shouldn't we apply the Louisiana insurance code? Because the Louisiana insurance code does not have a different, a separate statute of limitation that applies to those types of breaches as they did in Texas, Your Honor. I thought there was 22, 1821A says an insurer who fails to comply is subject to a penalty for double the amount of benefits due, and then it has a one-year statute of limitations in subsection E. And that's what I was going to get to next, Your Honor, was that even under the insurance statute, that statute applies. That statute has a one-year statute of limitations. So explain to me. You first said there wasn't an insurance code statute in Louisiana, but now there is. No, no. What I'm saying was that that particular statute applies mostly to property tax law and it's exempt from life, accident, and health, which this would be more akin to. They don't have one that's specific. But we're looking at something analogous. Right. It doesn't have to be exactly. I mean, ERISA's, there's an ERISA claim. That is absolutely true. The point being, Your Honor, is that it's the same one year as the tort statute. There's no difference under Louisiana law. I get you in under either one. We need to figure out which one it is. And that's what I was going to work my way back to if I may, Your Honor, real briefly. In this court in Texas, they did the same thing. Counsel was arguing for the one-year to two-year tort statute limitations. The Texas court, this court said, no, wait a minute. Texas has a specific one, just like the one Your Honor just pointed out, that applies two years to the cause of action. And they said, that's more analogous. You apply the two-year statute. Just like here, whether it's the one-year delictual action or the one in this statute by analogy, it would be the same. It would be one year. It's not 10 years under any circumstance. Because as this court noted, this does not sound in contract. The 1132C violation arises out of and only out of, which is this court's term, an administrative regulation. Failing to provide a document for a term of claim didn't arise out of the contract itself, which is the 1132A1B claim would arise out of. So this court made the right decision, the proper analysis in Lopez. A few years later, Judge Fallon, looking at it under Louisiana law, in the Center for Restorative Breast Surgery versus Humana Health, had the same issue before it, this time under a failure to provide requested documents. Now, Judge Fallon went through, he recognized Lopez and went through his own separate analysis. In his analysis, he found that, yes, the Fifth Circuit is right. This is not a contract claim. It does not sound in contract. It sounds in tort. And he applied the Louisiana one-year tort statute, 3492, as for the statute of limitations. Brings us to battle. Before Judge Zaney, we get the same thing. Judge Zaney recognized Center for Restorative Breast Surgery. He also recognized Lopez. But he also went through his own separate independent analysis and did a thorough analysis of it. And in doing so, he came to the same conclusion, that the one-year statute of limitations in Louisiana is the one that applies. And you educate me a little bit on the Louisiana delictual, you know, Louisiana uses all these words that everyone else uses a different word for. I have the statute, and it said it applies not just to negligence, but intentional misconduct, liability without negligence, sort of strict liability. I mean, what does that statute cover in Louisiana? Basically, it's our tort statute, Your Honor. It covers anything that arises. It's the default tort statute. It's the default tort statute. Statute of limitations.  And that's what it applies to here in Louisiana. Now, Judge Zaney went back, and he did his analysis, and he considered all of Plaintiff's arguments and refuted each and every one of them. That's because this sounds in tort. It does not sound in contract. It does not arise out of a refusal to pay benefits. It solely arises out of a statutory determination on the alleged failure to produce documents in a timely manner. That cause of action, Your Honor, it accrues within 30 days after the request is made. It begins to run. And, again, once again, it wasn't Mr. Babin who sent that letter out. It was Mr. Babin's counsel. So a counsel can certainly look at that statute and say, okay, this, by the plain reading of 1132C, if that's not provided in 30 days, that statute begins to run. That was in February of 2014. By, give them 30 days, March of 2014, the statute ran. No request, no suit for 1132C. Doesn't file suit until October of 2015. And so it's prescribed, Your Honor. And with respect to the tolling, that was not raised before. Counsel's brief is before the court. It's part of the record from the opposition in the court below. That issue was never raised and can't be brought up at these proceedings for the first time. With that, Your Honor, we believe that based on all of the documents, the record in Lopez, the record in Center for Restorative Breast Cancer, breast surgery, Judge Zaney's record below, and of the briefs filed herein, this court should affirm the decision rendered by Judge Zaney. Thank you. Thank you, sir. Stop. You have five minutes on the button. Just a couple of quick comments. The COBRA statute, as Your Honor mentioned, is obviously not the same as an ERISA statute. It does not have the same background in trust law that ERISA does. COBRA is about, you know, notices and penalties, so it was more appropriate for the Texas court to use an insurance statute in that instance than it is in a case governed by ERISA. As far as Your Honor's original question about the harshness of allowing a claim to remain open potentially forever and even after the statute of limitations for pursuing it on the merits is concerned, I think it may be an even more egregious problem to have the Louisiana situation where you have an extraordinarily short statute of limitations for pursuing these kinds of claims, especially where the claimant has not had any cooperation from his employer, hasn't had the employer complete any of the forms, hasn't given him any documents, and then he's faced with the decision of what to do. I think the case law pretty much across the board has rejected the contention that the tort statute of limitations applies. The courts, even the Texas courts and the cases other than Center for Restorative Breast Surgery, none of them have adopted a tort statute of limitations. They have analogized, they have on occasion had statutes of limitation apply that had the same period for pursuit of the claim as a tort claim, but they've rejected the contention that the tort law sets and defines the statute of limitation. That's our problem with Judge Zaney's decision is he applied a tort statute of limitations. That's the way he did it. We don't believe that it's correct, that that is the most analogous state statute, and the only other point on that that I wanted to make is if you pay close attention to the language of 1132C, and we take our language as having meaning, you'll see that the language that allows collection of penalties, the use of the penalty language that is so often used as the trigger to justify a one-year statute of limitations, is for collection of civil penalties under paragraphs 2, 4, 6, 7, 8, and 9. Babin's claim arises under 1132C1. These damages are not described in the statute as penalties. They are just, they're not given a description at all. It just says an amount, and it's a discretionary award, which allows the court to use it as compensatory if it desires, and that's the reason that this claim is in the petition for Mr. Babin is that he missed out on a large portion of his claim for the time period that he was out because of the way his claim was handled procedurally. Had he been given the plan documents and known that he needed to pursue a long-term disability claim, he would have been able to collect the remainder of that time that he was out, but he couldn't. That's all I have. Any questions? Thank you. Case is argument.